*796 IRVING, P.J.,
dissenting:
¶ 24. On December 1, 1997, Jimmy and Theresa Roby executed four promissory notes and four deeds of trust to secure repayment of a $200,000 indebtedness to SRT Investments (SRT). The deeds of trust were recorded on February 11, 1998, and covered five parcels of land that were owned by Jimmy and Theresa either as joint tenants with the right of survivorship or as tenants by the entirety with right of survivorship. On March 3, 1999, Jimmy and Theresa, via four warranty deeds, conveyed the five parcels of land to SRT. However, SRT did not record the deeds until August 20, 2002, which was sixteen days after Jimmy’s death. In the meantime, on May 28, 1999, Hilda Jane Roby Kelly, Jimmy’s former wife, had enrolled a $6,000 judgment against Jimmy that she had obtained against him for back-due child support.
¶ 25. On September 13, 2004, in an attempt to satisfy her judgment, Hilda petitioned the chancery court for authority to sell the property that had been conveyed to SRT by Jimmy and Theresa. The chancellor denied the petition. In doing so, the chancellor found, on the basis of Mississippi Code Annotated section 89-5-3 (Rev. 1999), that the four warranty deeds from Jimmy and Theresa to SRT were void as to Hilda because, although they were executed by the Robys to SRT prior to Hilda obtaining her judgment against Jimmy, they were not recorded prior to the enrollment of Hilda’s judgment. The chancellor also found that, since the deeds were void as to Hilda, the legal consequence thereof was a reversion of the fee simple title to Jimmy and Theresa. The chancellor then concluded that when Jimmy died without Hilda having executed on her judgment, her lien was extinguished, because Jimmy’s interest had passed to Theresa by virtue of the right-of-survivorship clause in the deeds. The majority finds no error in the chancellor’s ruling. With respect, I disagree; therefore, I dissent.
¶ 26. Section 89-5-3 reads in pertinent part as follows:
All bargains and sales, and all other conveyances whatsoever of lands ... shall be void as to all creditors ... unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county, to be recorded in the same manner that other conveyances are required to be acknowledged or proved and recorded.... But as between the parties and their heirs, ... said instruments shall nevertheless be valid and binding.
(Emphasis added). The parties to the March 3, 1999 deeds were Jimmy, Theresa, and SRT. Therefore, it is clear, from a proper interpretation of section 89-5-3, that title to the five parcels of land described in the deeds was conveyed or transferred to SRT, but subject to Hilda’s judgment lien. This is so because, as to Hilda, the transaction was void, meaning, legally, it was as if no transaction had occurred between Jimmy, Theresa, and SRT. If no transaction, recognizable by the law, had occurred at the point in time when Hilda enrolled her judgment, it stands to reason that her judgment lien attached when title to the property, as mandated by section 89-5-3, was still in the hands of Jimmy and Theresa. While a proper interpretation of section 89-5-3 may appear, at first blush, to present a conundrum, it really does not. I acknowledge, however, that it creates a legal fiction that prohibits recognition, to a limited degree, of an instrument, yet, at the same time, mandates full legal recognition of the instrument just rejected.[13] Consequently, *797 the majority, in my humble opinion, misinterprets section 89-5-3 as requiring that the conveyances from Jimmy and Theresa to SRT be deemed void not only to them, but to all the world. The plain language of the statute refutes such a construction, because under section 89-5-3, any unrecorded instrument remains a valid and binding instrument between the parties.
¶ 27. Although I find that the chancellor erred in finding that title to the property did not transfer to SRT as a result of the four warranty deeds given to it by Jimmy and Theresa, the analysis does not end there. Prior to Hilda’s judgment lien being filed, Jimmy and Theresa had given SRT four deeds of trust securing a $200,000 indebtedness. No question, these deeds of trust enjoyed priority status over Hilda’s judgment lien. Therefore, before we can resolve the issue of whether the chancellor erred in not granting Hilda’s petition for authority to sell the property to satisfy her judgment lien, we have to first decide whether the 1997 deeds of trust are valid and binding and, if so, whether the indebtedness secured by them has been paid off. In my judgment, the record is insufficient to make that determination. Therefore, I would reverse and remand this case to the chancery court for the express purpose of determining whether the 1997 deeds of trust created valid liens against the property. If the finding is that they were valid instruments at the time of their execution, then the chancellor should determine whether the March 3, 1999 conveyances constituted an equitable foreclosure of the 1997 deeds of trust. See Tulane Hardwood Lumber Co. v. Perry, 226 Miss. 492, 84 So.2d 519 (1956); Moses v. Ehrlich, 217 Miss. 341, 64 So.2d 352 (1953). If the chancellor finds that an equitable foreclosure of the 1997 deeds of trust occurred as result of the 1999 warranty deeds to SRT from Jimmy and Theresa, then the chancellor shall determine the amount of the outstanding indebtedness at the time of the foreclosure, as well as the value of the property. If the value of the properties exceeds the outstanding indebtedness, then the chancellor shall allow Hilda to execute upon the properties to satisfy her judgment lien.
¶ 28. For the reasons presented, I dissent.

. It is clear that the purpose of section 89-5-3 is to prevent the kind of havoc that could *797 and would occur in real-estate transactions if one is allowed to take title to real property and not promptly give notice to all the world of the change in ownership by timely recording the title instrument. What occurred in this case depicts with great clarity the havoc that the statute is designed to prevent. Since the grantee of the unrecorded instrument is the one who creates the problem, it is only proper that the law imposes any loss occasioned by the grantee’s dilatoriness upon that person or entity. Here, that person is Mary Phyfer.